Matthew G. Monforton  (Montana Bar # 5245)
Monforton Law Offices, PLLC
32 Kelly Court
Bozeman, Montana 59718
Telephone:  (406) 570-2949
E-mail:      matthewmonforton@yahoo.com

Attorney for Plaintiff SCRCC


## UNITED STATES DISTRICT COURT
## DISTRICT OF MONTANA
## HELENA DIVISION

| | |
|---|---|
| SANDERS COUNTY REPUBLICAN CENTRAL COMMITTEE, | Case No. CV-12-00046 |
| Plaintiff, | **BRIEF IN SUPPORT OF PLAINTIFF'S APPLICATION FOR TEMPORARY RESTRAINING ORDER & ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION** |
| v. | |
| STEVEN BULLOCK, in his official capacity as Montana's Attorney General; JAMES MURRY, in his official capacity as the Political Practices Commissioner; | Filed Concurrently with: |
| Defendants. | 1) *Application for Temporary Restraining Order* |
| | 2) *Declaration of Kathleen French in Support of Application* |
| | 3) *Proposed Order* |
| | **\* IMMEDIATE RELIEF REQUESTED \*** |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES…………………………………….         iii

INTRODUCTION……………………………………………….         1

STATEMENT OF FACTS……………………………………         2

ARGUMENT…………………………………………………….         5

**I    Political Parties have a First Amendment Right to
      Endorse Candidates for Public Office, Including
      Judicial Candidates**…………………………………....         5

**II   The Party Censorship Statute is not Narrowly
      Tailored to Achieve Any Compelling Interest**…………..         10

**III  SCRCC is Entitled to a Temporary Restraining
      Order**………..…………………………………........         14

       A. SCRCC is Likely to Succeed on the Merits…………….         14

       B. SCRCC will Suffer Irreparable Harm if
          Relief is not Granted…………………………………….         14

       C. The Balance of Equities Tips Sharply in
          SCRCC's Favor…………………………………..…….         16

       D. Enjoining the Party Censorship Statute is in the
          Public Interest…………......................................….         16

**CONCLUSION**…………………………………………….         17

# <u>TABLE OF AUTHORITIES</u>

<u>Cases:</u>

*Allee v. Medrano,*
  416 U.S. 802 (1974)…………………………………...    16

*Buckley v. Valeo,*
  424 U.S. 1 (1976)……………………………………..    6

*California Democratic Party v. Lungren,*
  919 F.Supp. 1397 (N.D.Cal.1996)………………………   7, 10-12

*Concerned Democrats of Florida v. Reno,*
  458 F.Supp. 60 (S.D.Fla.1978)…………………………...    7

*Citizens United v. F.E.C.,*
  130 S. Ct. 876 (2010)…………………………………   *passim*

*Elrod v. Burns,*
  427 U.S. 347 (1976)………………………….………..    15

*Eu v. San Francisco County Democratic Central Committee,*
  489 U.S. 214 (1989)…………………………………..    6

*Geary v. Renne,*
  911 F.2d 280 (9th Cir.1990)…………………………...    7

*Joelner v. Washington Park,*
  378 F.3d 613 (7th Cir. 2004)………………………….    16

*Monterey Mechanical Co v. Wilson,*
  125 F.3d 702 (9th Cir.1997)………………………….    15

*N.A.A.C.P. v. Alabama ex rel. Patterson,*
  357 U.S. 449 (1958)…………………………………..    6

*Renne v. Geary,*
  501 U.S. 312 (1991)……………………………………..    7

*Republican Party of Minnesota v. White,*
    536 U.S. 765 (2002)…………………………………………    7-8

*Republican Party of Minnesota v. White,*
    416 F.3d 738 (8th Cir.2005)…………………………...    8, 13

*Roberts v. U.S. Jaycees,*
    468 U.S. 609 (1984)………………………………...    6

*Stormans, Inc. v. Selecky,*
    586 F.3d 1109 (9th Cir. 2009)…………………………    15

*Thalheimer v. City of San Diego,*
    645 F.3d 1109 (9th Cir. 2011)…………………………    16

*Weaver v. Bonner,*
    309 F.3d 1312 (11th Cir.2002)…………………………    8

*Winter v. Natural Res. Def. Council, Inc.,*
    555 U.S. 7 (2008)………………………………………    14

**Statutes:**

Montana Code Annotated

    § 13-35-103…………………………………………….    9
    § 13-35-105…………………………………………….    9
    § 13-35-231…………………………………………….    1, 9

**Other Authorities:**

Larry Howell, *Once Upon a Time in the West: Citizens
United, Caperton, and the War of the Copper Kings,*
    73 Mont. L. Rev. 25 (2012)……………………………..    13

## INTRODUCTION

This is a simple case involving State censorship of core First Amendment speech.  SCRCC desires to publicly endorse two judicial candidates for the primary election scheduled for ***June 5, 2012*** and the general election scheduled for November 6, 2012.  Section 13-35-231, MCA, prohibits political parties from "endors[ing], contribut[ing] to, or mak[ing] an expenditure to support or oppose a judicial candidate" (hereafter, the "Party Censorship Statute" or the "Statute").  Montana's Commissioner of Political Practices recently told SCRCC that he and the county attorney will enforce the Statute -- a violation of which subjects citizens to, *inter alia*, six months in jail -- if SCRCC proceeds with its endorsements.

Montana's Party Censorship Statute is patently unconstitutional. Courts throughout the nation have struck down similar statutes prohibiting political parties from endorsing judicial candidates in so-called "non-partisan" elections.

This Court should do likewise.  Without relief from this Court prior to the primary election on ***June 5, 2012***,  SCRCC will suffer irreparable harm. Such "harm is particularly irreparable where, as here, a plaintiff seeks to engage in political speech, as timing is of the essence in politics and [a]

delay of even a day or two may be intolerable." *Thalheimer v. City of San Diego*, 645 F.3d 1109, 1128 (9th Cir.2011).  Absent a temporary restraining order, SCRCC will not be able to timely endorse the two judicial candidates it supports without its members risking possible jail time.


## STATEMENT OF FACTS

Sanders County Republican Central Committee (SCRCC) is the county central committee for the Republican Party in Sanders County. (French Decl.,  ¶ 3.)  SCRCC exercises authority in Sanders County on behalf of the Republican Party in accordance with §13-38-203, MCA, and a copy of its rules of government are on file with the election administrator in accordance with §13-38-105, MCA.  (Id., ¶ 4.)

SCRCC has long had a keen interest in policy issues affecting both Sanders County and Montana.  (French Decl., ¶ 5.)  One of SCRCC's goals is to promote the election of candidates to public office who share its ideological views. (Id., ¶ 6.)

Given the increasing intrusions by left-leaning state judges into areas of policy traditionally reserved to the Legislature, SCRCC considered endorsing judicial candidates for the primary and general elections in 2012 that are believed to share SCRCC's judicial philosophy of interpreting the

law rather than legislating from the bench.  (French Decl., ¶ 7.)  SCRCC has

hesitated doing so, however, because the election laws of this state prohibit

such endorsements.  (Id., ¶ 8.)  In fact, SCRCC's committee members have

often refrained from even discussing at SCRCC meetings topics relating to

judicial candidates so as to avoid even the appearance of endorsing any of

them.  (Id., ¶ 8.)

SCRCC wrote a letter to the Commissioner of Political Practices,

Defendant James Murry, in early March 2012 stating that it desired to

endorse judicial candidates and believed that it had right to so based upon

*Citizens United*.  (French Decl., ¶ 7.)  In a letter dated April 20, 2012,

Defendant Murry responded to SCRCC by stating that his office, "in

conjunction with the county attorneys, is responsible for enforcing the

election laws contained in Title 13, Chapters 35 and 37 of the Montana Code

Annotated."  (A true and correct copy of this letter is attached as **Exhibit 1**

to the Declaration of Kathleen French.)  Defendant Murry further declared

that § 13-35-231, MCA (the statute that prohibits political parties from

endorsing judicial candidates) "is included within those election laws, thus I

am obligated to enforce the law." (French Decl., **Exhibit 1**.)

As a result of Defendant Murry's threat, SCRCC has been forced to

limit its communications with the public.  (French Decl., ¶ 12.)  For

3

example, on May 24, 2012, SCRCC purchased a half-page advertisement in two local newspapers, the *Sanders County Ledger* and the *Valley Press / Mineral Independent.* (Id., ¶ 13; a true and correct copy of this advertisement is attached as **Exhibit 2** to the Declaration of Kathleen French.) These advertisements contained SCRCC's endorsements of 30 candidates for various offices for the June primary. (Id., ¶ 14.) SCRCC listed the name of each endorsed candidate next to the public office he or she is seeking. (Id., ¶ 14.)

SCRCC has identified specific judicial candidates it desires to endorse. (French Decl., ¶ 15.) One is a candidate for District Court Judge for the Twentieth Judicial District, while the other is a candidate for Justice No. 5 for the Montana Supreme Court. (Id., ¶ 15.)

SCRCC did not include endorsements for these judicial candidates in its newspaper advertisements. (French Decl., ¶ 16.) Instead, SCRCC inserted the phrase "party endorsement prohibited by law," rather than the names of the judicial candidates that it desired to endorse. (Id., ¶ 16.) SCRCC omitted the names of these candidates from its advertisements because of Defendant Murry's threat. (Id., ¶ 16.)

In addition to newspaper advertisements, SCRCC intends to utilize its website, electronic mailings, and radio advertisements between now and the

primary election on June 5, 2012, to further publicize its candidate endorsements. (French Decl., ¶ 18.)  If the Court enjoins Defendants from enforcing § 13-35-231, MCA, prior to the primary on June, 5, 2012, SCRCC intends to publicly endorse the two judicial candidates described previously through its website, electronic mailings, and radio advertisements.  (Id., ¶ 19.)  SCRCC also intends to publicly endorse judicial candidates for the general election in November 2012 if it obtains from this Court the relief it seeks.  (Id., ¶ 19.)  SCRCC intends to publicize these general election endorsements via newspaper advertisements, its website, electronic mailings, and radio advertisements. (Id., ¶ 20.)

## ARGUMENT

### I

### Political Parties have a First Amendment Right to Endorse Candidates for Public Office, Including Judicial Candidates

SCRCC desires to endorse judicial candidates for public office in the midst of an election.  This speech enjoys the highest constitutional protection because "[i]f the First Amendment has any force, it prohibits Congress from fining or jailing citizens, or associations of citizen, for simply engaging in political speech."  *Citizens United v. F.E.C.*, ___ U.S. ___, 130

S.Ct. 876, 904 (2010).  Moreover, "discussion of public issues and debate on the qualifications of candidates are integral to the operation of the system of government established by our Constitution."  *Id.* at 898, quoting *Buckley v. Valeo*, 424 U.S. 1, 14 (1976).

Inherent in the First Amendment's right to freedom of speech and assembly is a right to freedom of association.  *Roberts v. U.S. Jaycees*, 468 U.S. 609, 622 (1984); *N.A.A.C.P. v. Alabama ex rel. Patterson*, 357 U.S. 449, 460-61 (1958).  This applies, of course, to political parties.  *Eu v. San Francisco County Democratic Central Committee*, 489 U.S. 214, 224 (1989) ("[b]arring political parties from endorsing and opposing candidates not only burdens their freedom of speech but also infringes upon their freedom of association"); *id.*, 489 U.S. at 223-24 (controlling information received by voters is a "highly paternalistic approach" that "is particularly egregious where the State censors the political speech a political party shares with its members").

The cases cited above stand for two fundamental principles: (1) political speech pertaining to candidate qualifications enjoys the highest degree of protection under the First Amendment and (2) political parties have the same right to engage in such speech as natural persons.  Not surprisingly, every court that has reached the merits regarding challenges to

laws prohibiting endorsements of judicial candidates by political parties has struck them down.  See, *e.g.*, *Geary v. Renne*, 911 F.2d 280, 286 (9th Cir.1990) (striking California Constitution's ban on endorsements by political parties in non-partisan elections), *rev'd on other grounds sub nom.*, *Renne v. Geary*, 501 U.S. 312, 323-24 (1991); *California Democratic Party v. Lungren*, 919 F.Supp. 1397, 1404 (N.D.Cal.1996) ("…California cannot suppress speech by political parties concerning the merits of judicial candidates' qualifications for office"); *Concerned Democrats of Florida v. Reno*, 458 F.Supp. 60, 64-65 (S.D.Fla.1978) (preliminary injunction issued to prevent enforcement of Florida statute prohibiting political parties from endorsing judicial candidates).

SCRCC is not aware of a contrary holding anywhere in the nation. And since the court in *Lungren* struck down California's partisan endorsement ban in 1996, federal courts have unceasingly invalidated other restrictions on speech concerning judicial candidates.   For example, the Supreme Court struck down a Minnesota judicial canon prohibiting judicial candidates from announcing their legal and political views because the canon "both prohibits speech on the basis of its content and burdens a category of speech that is 'at the core of our First Amendment's freedoms – speech about the qualifications of candidates for political office."

*Republican Party of Minnesota v. White*, 536 U.S. 765, 774 (2002).  After the Supreme Court remanded the case, an *en banc* panel of the Eighth Circuit held that another Minnesota judicial canon prohibiting judicial candidates from seeking political party endorsements was unconstitutional. *Republican Party of Minnesota v. White*, 416 F.3d 738, 761-63 (8th Cir.2005).

The Supreme Court's decision in *White* "suggests that the standard for judicial elections should be the same as the standard for legislative and executive elections."  *Weaver v. Bonner*, 309 F.3d 1312, 1321 (11th Cir.2002).  Moreover, "the distinction between judicial elections and other types of elections has been greatly exaggerated, and we do not believe that the distinction, if there truly is one, justifies greater restrictions on speech during judicial campaigns than during other types of campaigns."  *Id.* at 1321.

The Supreme Court recently reiterated its hostility toward government censorship of "undesirable" groups during elections.  *Citizens United,*130 S.Ct. at 899 ("We find no basis for the proposition that, in the context of political speech, the Government may impose restrictions on certain disfavored speakers.")  And while *Citizens United* involved a challenge to

8

restrictions on speech by corporations, the Court left no doubt as to its

broader views on laws such as Montana's Party Censorship Statute:

> When Government seeks to use its full power, including
> the criminal law, to command where a person may get his
> or her information or what distrusted source he or she
> may not hear, it uses censorship to control thought.  This
> is unlawful.  The First Amendment confirms the freedom
> to think for ourselves.

*Id.*, 130 at 908.

Montana's Party Censorship Statute is the kind of law the Court

warned about – one in which the State uses the criminal law to prevent

distrusted sources such as political parties from conveying information about

candidates to its members and to the electorate as a whole.  As stated by the

Statute, political parties "may not endorse, contribute to, or make an

expenditure to support or oppose a judicial candidate." § 13-35-231, MCA.

Violations of the Statute are crimes.  § 13-35-103, MCA.  Moreover, persons

who aid and abet violations of Montana's election law, such as party leaders

who facilitate a party endorsement of judicial candidates, are criminally

liable. § 13-35-105, MCA.

Because of the Statute, and the State's recent threat to enforce it,

SCRCC was forced to remove from a newspaper advertisement the names of

two judicial candidates it wanted to endorse.  (French Decl., ¶¶ 12-17.)

Indeed, the chilling effect from the Party Censorship Statute is such that

9

SCRCC members are often afraid to even discuss judicial candidates *at all* during their meetings lest their discussions create an inference of an endorsement for a particular candidate. (French Decl., ¶¶ 8.)

The Statute -- and the State's threat to enforce it -- are directly infringing upon SCRCC's core First Amendment rights. SCRCC members still desire to publish the candidates' names on its website, in electronic mailings, and on the radio prior to the primary election on June 5, 2012, but cannot risk criminal sanctions to do so. (Id., ¶ 19.) Enforcement of the Statute must therefore be enjoined, thereby ending this injustice.

## II

### The Party Censorship Statute is not Narrowly Tailored to Achieve Any Compelling Interest

Because the Party Censorship Statute imposes a direct and substantial burden on core First Amendment speech, it is subject to strict scrutiny and can survive only if it "furthers a compelling interest and is narrowly tailored to achieve that interest." *Citizens United*, 130 S.Ct. at 898. While Montana has an interest in how elected judges conduct themselves <u>*after*</u> they are in office, the state "does not and cannot have a legitimate interest in silencing the speech of third parties about the qualifications and political views of candidates for those offices." *Lungren*, 919 F.Supp. at 1402.

10

Advocates of party censorship statutes such as Montana's typically claim that two interests are advanced: (1) judicial independence and (2) voter independence.  Neither argument is persuasive.

Censorship of party speech cannot be justified as a means to promote judicial independence because "the political threat to judicial independence is attributable far more to the decision to elect judges in the first place and to subject them to re-election, than it is to party endorsement."  *Lungren*, 919 F.Supp. at 1405.  Judge Reinhardt's observations about California's party censorship law apply with equal force to Montana's:

> The State of [Montana] cannot have it both ways. If it wants to elect its judges, it cannot deprive its citizens of a full and robust election debate. It cannot forbid speech by persons or groups who wish to make their views, support, or endorsements known. Nor can it complain if the citizens wish to make their electoral judgments based in part on recommendations made by political parties. If the people are to be given the right to choose their judges directly, they are free, rightly or wrongly, to consider the political philosophy of the candidates.

*Id.*, 919 F.Supp. at 1405, quoting *Geary*, 911 F.2d at 294 (Reinhardt, J., concurring).

Nor does the State have a compelling interest in preventing voters from being "corrupted" by party endorsements when selecting judicial candidates.  This is because "the prospect that voters might be persuaded by party endorsements is not a *corruption* of the democratic process; it *is* the

11

democratic process." *Lungren*, 919 F.Supp at 1404, quoting *Geary v. Renne*, 501 U.S. at 349 (Marshall, J., dissenting), emphasis in original. Thus, "the effort, however well-meaning, to protect voters from themselves by silencing those voices perceived to be the most influential during a campaign cannot be reconciled with the free marketplace of ideas contemplated by the First Amendment." *Lungren*, 919 F.Supp at 1404.

Even if the State could articulate a compelling interest for censoring party speech in the heat of an election, the Party Censorship Statute is not narrowly tailored to advance that interest. The Statute not only silences the Democratic and Republican parties with regard to judicial candidates, but also minor parties such as the Libertarians, the Green Party, and the Constitution Party. Endorsements from minor parties, many of which obtain less than one percent of the vote in general elections, certainly cannot be said to influence elections, much less "corrupt" them.

Finally, if Montana truly does have a compelling interest in protecting its judicial candidates and its voters from the supposed sullying pressures created by political parties, the Party Censorship Statute is fatally underinclusive. As noted by the Eighth Circuit:

> There are numerous other organizations whose purpose is to work at advancing any number of similar goals, often in a more determined way than a political party. Minnesota worries that a judicial candidate's consorting with a political party will damage that individual's impartiality or appearance of impartiality as a judge, apparently because she is seen as aligning herself with that party's policies or procedural goals. But that would be no less so when a judge as a judicial candidate aligns herself with the constitutional, legislative, public policy and procedural beliefs of organizations such as the National Rifle Association (NRA), the National Organization for Women (NOW), the Christian Coalition, the NAACP, the AFL-CIO, or any number of other political interest groups.

*White*, 416 F.3d at 759.

Unions in particular seem prone to leverage their influence in judicial elections. As one anonymous AFL-CIO official put it, "We figured out a long time ago that it's easier to elect seven judges than to elect 132 legislators." Larry Howell, *Once Upon a Time in the West: Citizens United, Caperton, and the War of the Copper Kings*, 73 MONT. L. REV. 25, 41 (2012). There is simply no justification for a statutory scheme that permits unions to endorse judicial candidates but deprives political parties of that same First Amendment right.

## III

## SCRCC  is Entitled to a Temporary Restraining Order

To obtain injunctive relief, a plaintiff must show (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm if injunctive relief is not granted, (3) the balance of equities tips in his or her favor, and (4) an injunction is in the public interest.  *Winter v. Natural Res. Def. Council, Inc.*, 129 S.Ct. 365, 374 (2008).  As shown below, SCRCC can satisfy each of these requirements.

### A

### SCRCC is Likely to Succeed on the Merits

SCRCC has previously demonstrated that the Party Censorship Statute unquestionably violates the First Amendment.[1]  SCRCC is therefore likely to succeed on the merits.

### B

### SCRCC will Suffer Irreparable Harm if Relief is not Granted

Ongoing or future constitutional violations by a defendant satisfy the irreparable harm requirement because "unlike monetary injuries,

---

[1] See Parts I and II, *supra*.

14

constitutional violations cannot be adequately remedied through damages."
*Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1138 (9th Cir. 2009); *Monterey Mechanical Co v. Wilson*, 125 F.3d 702, 715 (9th Cir.1997) ("an alleged constitutional infringement will often alone constitute irreparable harm"). Moreover, "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373-74, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976).   Such "harm is particularly irreparable where, as here, a plaintiff seeks to engage in political speech, as timing is of the essence in politics and [a] delay of even a day or two may be intolerable." *Thalheimer v. City of San Diego*, 645 F.3d 1109, 1128 (9th Cir. 2011).

As stated previously, the Party Censorship Statute violates SCRCC's rights under the First Amendment.[2]  This deprivation will continue until this Court grants relief, relief that cannot be achieved with monetary damages. This factor thus weighs in favor of granting injunctive relief.

---

[2] See Parts I and II, *supra*.

15

C

The Balance of Equities Tips Sharply in SCRCC's Favor

The injunctive relief SCRCC seeks will do nothing more than allow it to endorse two judicial candidates running for District Court and the Supreme Court.  If SCRCC is denied this right, it will continue suffering a depravation of its constitutional rights.  On the other hand, the detriment to the State from enjoining the Statute is zero.  *Cf. Allee v. Medrano*, 416 U.S. 802, 814 (1974) (upholding injunction prohibiting police harassment of union organizers because "on its face the injunction does no more than require the police to abide by constitutional requirements").  The balance of equities therefore tips sharply in SCRCC's favor.

D

Enjoining the Statute is in the Public Interest

SCRCC's First Amendment rights are ones that, if protected, will unquestionably advance the public interest.  *Thalheimer*, 645 F.3d at 1129 ("Courts considering requests for preliminary injunctions have consistently recognized the significant public interest in upholding First Amendment principles."); *Joelner v. Washington Park*, 378 F.3d 613, 620 (7th Cir. 2004)

16

("it is always in the public interest to protect First Amendment liberties"). This factor therefore favors granting injunctive relief as well.


## CONCLUSION

All four factors of the *Winter* test for injunctive relief strongly favor granting such relief to SCRCC.  Because SCRCC will suffer irreparable harm if it is not permitted to endorse, before the ***June 5, 2012*** primary election, the judicial candidates it has identified, SCRCC requests that this Court grant this Application for Temporary Restraining Order.


DATED: May 29, 2012          /s/ Matthew G. Monforton
                             Matthew G. Monforton

                             Attorney for Plaintiff SCRCC