

FILED
JUN 26 2012
PATRICK E. DUFFY, CLERK
By_____
DEPUTY CLERK, HELENA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

HELENA DIVISION

| | |
|---|---|
| SANDERS COUNTY REPUBLICAN CENTRAL COMMITTEE, <br><br> Plaintiff; <br><br> vs. <br><br> STEVE BULLOCK, in his official capacity as Montana's Attorney General; JAMES MURRY, in his official capacity as Montana's Commissioner of Political Practices; <br><br> Defendants. | CV 12-46-H-CCL <br><br><br><br><br><br> ORDER |

The Sanders County Republican Central Committee applies for a preliminary injunction that enjoins the defendants from enforcing the endorsement prohibition in Montana Code Annotated § 13–35–231. That statute reads: "A political party may not endorse, contribute to, or make an expenditure to support or oppose a judicial candidate."

On June 1, 2012, the Court denied the Committee's application for a temporary restraining order. In its order, the Court directed the parties to appear for a hearing on the Committee's application for a preliminary injunction. The

1

hearing was set for June 11, 2012, and the Court permitted the parties to file additional briefs addressing the application.

Kathleen French, chair of the Committee, appeared at the hearing and was represented by Matthew G. Monforton. Assistant Attorneys General Michael G. Black and Andrew Huff represented the defendants.

## BACKGROUND

The plaintiff is the county central committee for the Republican Party in Sanders County. It states that one of its goals "is to promote the election of candidates to public office who share its ideological views." To that end, it wishes to endorse candidates in nonpartisan judicial elections. According to the Committee, "Given the increasing intrusions by left-leaning state judges into areas of policy traditionally reserved to the Legislature, [the Committee] desires to endorse judicial candidates for the primary and general elections in 2012."

Montana Code Annotated § 13–35–231 prohibits political parties from endorsing judicial candidates. Consequently, the Committee claims that it has not publicly endorsed candidates and has often refrained from even discussing judicial candidates at Committee meetings.

In early March 2012, the Committee wrote a letter to Defendant James Murry, Montana's Commissioner of Political Practices, stating that it wished to

2

endorse judicial candidates and that it believed it had a constitutional right to do so under the U.S. Supreme Court's decision in *Citizens United v. FEC*, 130 S. Ct. 876 (2010). Commissioner Murry responded that Section 13–35–231 is an election law that he is obligated to enforce.

The Committee then filed its complaint for injunctive and declaratory relief and also filed an application for a temporary restraining order, which the Court denied.

Having heard and considered the parties' arguments, the Court is now prepared to rule on the Committee's application for a preliminary injunction.

## PRELIMINARY INJUNCTION STANDARD

"'A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *Thalheimer v. City of San Diego*, 645 F.3d 1109, 1115 (9th Cir. 2011) (quoting *Winter v. Natural Resource Def. Council, Inc.*, 555 U.S. 7, 24–25 (2008)).

"[T]he moving party bears the initial burden of making a colorable claim that its First Amendment rights have been infringed, or are threatened with infringement, at which point the burden shifts to the government to justify the

3

restriction." *Id.* at 1116 (citations omitted).

## ANALYSIS

At the preliminary injunction hearing, the Committee confirmed that the only portion of Section 13-35-231 that it challenges is the prohibition against political party endorsements of judicial candidates. It does not challenge the portions of the statute prohibiting expenditures or contributions.

The Court concludes that the Committee's claims are justiciable but that the Committee is not likely to succeed on the merits of its claims at this point in the litigation. The Court also concludes that the public interest and equities weigh against an injunction. The Court therefore denies the Committee's application.

### I.   Committee by-laws and justiciability

As a threshold matter, the defendants argue that this case is not justiciable because the Committee has not adopted by-laws that would allow it to endorse judicial candidates. Without such by-laws, the defendants argue, the Committee does not have the authority to endorse judicial candidates, and any decision from this Court on the matter would therefore be an advisory opinion. The defendants claim, " No claim can be ripe unless and until [the committee's] rules allow it to make endorsements in nonpartisan judicial elections." The Court disagrees.

The Ninth Circuit addressed similar circumstances in *San Francisco County*

4

*Democratic Central Committee v. Eu*, 826 F.2d 814 (9th Cir. 1987), *aff'd*, *Eu v. San Francisco County Democratic Central Committee*, 489 U.S. 214 (1989). There, the court held that a central committee does not need to have adopted by-laws that permit a particular method of speech in order to challenge a statute that prohibits such speech. *Id.* at 823; *see also Eu*, 489 U.S. at 214 n.15. The court explained:

> We . . . reject the State's suggestion that if political parties are reluctant to violate the statutes they must obtain standing by adopting bylaws that conflict with the statutes and then disregarding those bylaws in actual practice. Institutions are not required to make the empty gesture of passing rules that are void as a matter of law and ignored as a matter of institutional practice in order to satisfy standing requirements. Certainly a failure to make such a futile gesture gives us no grounds for inferring that the parties' bylaws merely reflect a neat coincidence of what the parties want and what the statutes require.

*Id.*

At least in Montana, there is good reason for this rule. If a central committee adopts a by-law permitting speech that is otherwise prohibited by statute, that itself is a violation of Montana law. *See* Mont. Code Ann. § 13–35–104.

Here, then, the Committee may challenge Section 13–35–231's prohibition of endorsements, even though the Committee has not adopted a by-law that would allow it to endorse a judicial candidate.

5

## II. Section 13–35–231 and the First Amendment

The First Amendment of the United States Constitution provides: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. amend. I. The Committee claims that Section 13–35–231, which prohibits political parties from endorsing judicial candidates, violates the First Amendment.

"Speech is an essential mechanism of democracy, for it is the means to hold officials accountable to the people." *Citizens United*, 130 S. Ct. at 898 (quoting *Buckley v. Valeo*, 424 U.S. 1, 14–15 (1976)). The First Amendment therefore "has its fullest and most urgent application to speech uttered during a campaign for political office." *Id.* (citations and internal quotation marks omitted).

That being said, a government may restrict political speech if it can show that the restriction "furthers a compelling interest and is narrowly tailored to achieve that interest." *Id.* (quoting *FEC v. Wisc. Right to Life, Inc.*, 551 U.S. 449, 464 (2007)); *see also Geary v. Renne*, 911 F.2d 280, 282–83 (9th Cir. 1990) (en banc), *judgment reversed and vacated on other grounds*, 501 U.S. 312 (1991).

6

## A. Compelling state interest

Both parties in this case agree that Montana has a compelling interest in ensuring that its judiciary is independent and fair. They are not alone. As Justice Kennedy remarked, "Judicial integrity is . . . a state interest of the highest order." *Republican Party of Minn. v. White*, 536 U.S. 765, 793 (Kennedy, J., concurring); *accord Capterton v. A.T. Massey Coal Co., Inc.*, 556 U.S. 868, 889 (2009); *see also Siefert v. Alexander*, 608 F.3d 974, 979–80 (7th Cir. 2010) (recognizing that it is "beyond doubt that states have a compelling interest in developing, and indeed are required by the Fourteenth Amendment to develop . . . independent and faithful jurists"), *cert. denied*, 131 S. Ct. 2872 (2011).

The states' interest in judicial independence and fairness necessitates, by definition, a nonpartisan judiciary. *See Mistretta v. United States*, 488 U.S. 361, 407 (1989) ("The legitimacy of the Judicial Branch ultimately depends on its reputation for impartiality and nonpartisanship."); *see also Hurles v. Ryan*, 650 F.3d 1301, 1309 (9th Cir. 2011); *Wersal v. Sexton*, 674 F.3d 1010, 1022–23 (8th Cir. 2012).

These interests apply with equal force to sitting judges, as well as judicial candidates:

> We reject the suggestion that judicial candidates ought to enjoy greater freedom to engage in partisan politics than sitting judges. An asymmetrical electoral process for judges is unworkable. Fundamental

> fairness requires a level playing field among judicial contenders. Candidates for judicial office must abide by the same rules imposed upon the judges they hope to become.

*Wolfson v. Brammer*, 822 F. Supp. 2d 925, 932 (D. Ariz. 2011) (rejecting First Amendment challenge to the Arizona Code of Judicial Conduct's prohibition of judicial candidates' political activities); *see also* Mont. Code of Jud. Conduct, Canon 4 (2008).

Given the admitted and unequivocally compelling interest that Montana has in maintaining an independent and fair judiciary, the question then becomes whether Section 13–35–231's prohibition of party endorsements of judicial candidates is narrowly tailored to achieve that interest.

### B. Narrowly tailored

This Court is not the first to consider whether a state may constitutionally prohibit political parties from endorsing judicial candidates in nonpartisan elections. The Ninth Circuit, sitting en banc, did so more than two decades ago in *Geary v. Renne*, 911 F.2d 280 (9th Cir. 1990) (en banc). There, the en banc court held that a California statute prohibiting political parties from endorsing candidates for nonpartisan judicial offices violated the First Amendment. *Id.* The court's decision, though, has no precedential effect here because the U.S. Supreme Court vacated the judgment on different grounds—namely, that the matter was not justiciable. *See Renne*, 501 U.S. 312. Nevertheless, while not binding on this

court, the en banc court's reasoning has persuasive value.

The *Geary* court assumed, without deciding, that California had a compelling state interest in maintaining an independent, nonpartisan judiciary. 911 F.2d at 284–85. It concluded, though, that California's statute was not narrowly tailored to achieve that interest. *Id.* at 285–86. The court explained:

> [P]olitical parties as well as party adherents possess rights of expression and association under the first amendment, and the mere fact that § 6(b) targets the collective rather than the individual voices of party members does not suffice to render it "precisely drawn."

*Id.* at 285.

Judge Rymer dissented, with Judges Alarcon and Fernandez joining her. *Id.* at 295–315. She agreed with the majority's conclusion that the mere fact that California's statute targeted the collective rather than the individual voices of party members was not sufficient to render the statute "precisely drawn." *Id.* at 301 (Rymer, J., dissenting). But, she reasoned:

> [T]he fact that [the statute] targets the collective voice only with respect to endorsements for nonpartisan offices may render it drawn as precisely as it can be, for to preclude party endorsements in nonparty elections is the flip side of a candidate's running for nonpartisan office without party identification.

*Id.*

Judge Rymer's reasoning is persuasive. As she observes, there might not be a way to more narrowly tailor these types of statutes. Here, the Committee

9

conceded this point at the preliminary injunction hearing. If, contrary to Section 13-35-231, political parties were permitted to endorse nonpartisan judicial candidates, then the elections might be nonpartisan only in form. Nonpartisan elections, perhaps, can truly be nonpartisan only if political parties are prohibited from endorsing the candidates.

The U.S. Supreme Court's decision in *Citizens United* supports Judge Rymer's dissenting opinion. In *Citizens United*, the Court observed that it has "upheld a narrow class of speech restrictions that operate to the disadvantage of certain persons" where the restrictions "were based on an interest in allowing governmental entities to perform their functions." *Id.* at 899 (collecting cases). As Judge Rymer's dissent suggests, it might not be possible for a nonpartisan judicial election to function if political parties are allowed to endorse the candidates. She explained:

> A nonpartisan election is by definition *not* theirs. The purpose of an election within the nonpartisan structure has nothing to do with settling the internal divisions within a political party. Rather, a nonpartisan structure abandons the political party as a conduit for the electorate's views. Nonpartisanship envisions direct representation of citizens rather than indirect representation through parties as intermediaries.

911 F.2d at 299 (citations and internal quotation marks omitted).

By the Committee's own admission, it wishes to endorse judicial candidates for the very purpose of injecting partisanship into the elections. In its complaint,

10

the Committee writes:

> One of [the Committee's] goals is to promote the election of candidates to public office who share its ideological views. . . . Given the increasing intrusions by left-leaning state judges into areas of policy traditionally reserved to the Legislature, [the Committee] desires to endorse judicial candidates for the primary and general elections in 2012.

The Committee's express objective is to use endorsements to transform Montana's nonpartisan judicial elections into functionally partisan elections and, more specifically, to attack "left-leaning state judges."

The Court agrees with Judge Rymer's well-reasoned analysis and, consequently, concludes that—at this point in the litigation—the Committee is not likely to prevail on the merits of its claims. Moreover, the remaining three preliminary-injunction elements do not tip the scales in favor of granting an injunction. While the statute prohibits the Committee from endorsing judicial candidates, the public interest and equities counsel against an injunction. "[T]here is an obvious interest to both the public and the Legislature in having judicial candidates free of the appearance of impropriety. An appearance of partisanship will hardly foster public confidence in the courts." *Concerned Democrats of Fla. v. Reno*, 458 F. Supp. 60, 64–65 (S.D. Fla. 1978).

What is more, there is no record at this point to guide the Court's decision. Judge Rymer observed the same problem in *Geary*:

11

> It is particularly troubling in this case that there is virtually no record. There is, for example, no evidence showing whether the relative voice of political parties has been unduly significant or influential in nonpartisan elections where endorsements have occurred. Nor is there any evidence bearing on feasibility of alternate means to aid the state's interest. The absence of a record leads inexorably to judges judging on their own instinct or experience.

911 F.2d at 306.

When *Geary* was before the U.S. Supreme Court, the Court similarly observed:

> The free speech issues argued in the briefs filed here have fundamental and far-reaching import. For that very reason, we cannot decide the case based upon the amorphous and illdefined factual record presented to us.

*Renne v. Geary*, 501 U.S. 312 (1991).

I believe this statement reasonably suggests that the U.S. Supreme Court did not agree with the conclusion reached by the Ninth Circuit en banc majority on the same *Geary* record. That is, the record was insufficient to warrant the relief granted.

Here, the State of Montana has apparently successfully utilized a nonpartisan election system to choose its judges for decades. Here, also, the free speech issues have "fundamental and far-reaching import," which this Court ought not decide without a complete record.

## CONCLUSION

Given the above considerations, a preliminary injunction is not appropriate

12

at this point. The Committee might ultimately succeed on the merits in this litigation, but success is unlikely at this point and in the absence of a well-developed record.

IT IS ORDERED that the Sanders County Republican Central Committee's application for a preliminary injunction is DENIED.

IT IS FURTHER ORDERED that this case is set for a bench trial on September 25, 2012, at 10:00 a.m. at the United States Courthouse in Helena, Montana.

IT IS FURTHER ORDERED that the parties shall meet and confer to discuss the schedule for the remainder of this case, including deadlines for discovery, motions, and pretrial conferences. *See* Fed. R. Civ. P. 16(b), 26(f). The parties are ordered to submit a proposed schedule by July 20, 2012. The Court will then issue a final scheduling order.

Dated this 26th day of June 2012.

_____
CHARLES C. LOVELL
SENIOR UNITED STATES DISTRICT JUDGE